Opinion of the Court, by
Judge Owsley.
Samuel Hinch, in 1784, gave an obligation to Adam Hampton for the conveyance of two hundred and ninety acres of land, on Harrod’s Run, adjoining Michael Humble, &c. Rochester having become the proprietor of the obligation in 1796, sold it to Anderson, and by an instrument of writing executed by him, made over all his right and interest in the obligation, to Anderson, and covenanted to secure from Hinch, a good and sufficient deed in fee simple for the land; and on the failure of Hinch to comply with his obligation, or on Anderson being evicted of the whole or any part of the land, to refund the principal and interest. To be relieved from the contract, Anderson filed his bill, in which he states the purchase of the land from Roches *144 ter, the transfer of the bond on Hinch, and the covenant of Rochester to secure a deed from Hinch. He charges that the legal title to the land is not in Hinch, as was represented by Rochester, but in M’Bride’s heirs; that Rochester, when he was making the contract, shewed him, Anderson, the lines and corners, as he alleged between the land included in the bond on Hinch and Humble; that the lines shewn run on the land of Humble and include about thirteen acres thereof; that at least twenty-five acres of the land purchased, has since been decreed the heirs of M’Bride, in a suit which was depending against Hinch and Humble at the time of the contract; that he knew nothing of the pendency of the suit when he made the purchase, and Rochester then assured him there was no dispute in the land. He prays in his bill for a rescision of the contract, and general relief. Rochester in his answer admits the contract; but denies every circumstance of fraud. The circuit court of Lincoln, upon a final hearing of the cause, refused to decree a rescision of the contract, but decreed compensation for the land decreed to M’Ride's heirs, and a conveyance to be made for the residue of the tract; from which decree Rochester prosecutes this writ of error. In deciding on the propriety of decree, it becomes necessary to enquire whether the contract should be rescinded. It is relied on by Anderson, that Rochester has been guilty of a fraud in representing the lines and corners falsely, between the tract purchased and Humble. We think the evidence in the cause does not support this charge. The deposition of M’Kinney proves, that at the request of Rochester, he shewed the lines and corners as correctly as he could, that he had never been round the lines, and that he then informed Anderson that he did not know certainly where they were. But where the lines run that were shewn by M’Kinney, or whether or not they were truly represented, is not shewn. It is true, the deposition of Vandever proves, that in 1798, after the contract, M’Kinney shewed him, with others, the lines which he said he had shewn to Anderson, and which lines are described in Vandever’s deposition; but certainly the statements of M’Kinney to Vandever, about two years after the contract was made, when not on oath, nor even in the presence of Rochester, cannot be taken as evidence against Rochester. The deposition *145 of M’Kinney was taken. He is a competent witness, and should have been examined as to the position of the lines shewn by him; or at least the evidence of some person who was present when the lines were shewn, should have been taken to establish them. That Rochester failed to inform Anderson of the claim of M’Bride’s heirs, and the pendency of the suit against Hinch and Humble, are also relied on as circumstances of fraud. Whether Anderson knew of the claim or the pendency of the suit, admits of some doubt; we think, however, that the weight of evidence is in favor of his having notice. The deposition of M’Kinney proves, when he was shewing the lines, Anderson enquired of him respecting the title; that he told him, Hinch was good for it; that Michael Humble had always told him a deed would be made by M’Bride’s heirs, so soon as the suit against Humble and Hinch should be determined. From this, it appears evident that Anderson had notice; but opposed to it is the evidence of M’Dowell, who proves that he heard a conversation between Rochester and Anderson some time after the contract was made, at which time Anderson denied having had any knowledge of the dispute about the land, and that Rochester did not say he had; from which circumstance and further observations made by Rochester, as to quieting the dispute, he understood Anderson had not notice. From this evidence, Rochester appears to have been talking about quieting the dispute. His having been silent when Anderson denied notice, under such circumstances, should not be received as evidence of the truth of Anderson’s statements. Had he been desirous of quieting the dispute with Anderson, he would in reasonable probability have avoided contradiction, or using any expressions which might tend to provoke or irritate Anderson. That Anderson had notice, seems the more probable, from the stipulation in the covenant of Rochester, to refund in case of failure of Hinch to comply with his obligation, or on Anderson’s being evicted from the land or any part thereof. The parties appear to have anticipated a loss of all or part of the land, and stipulated against the event. If we are correct in Anderson having had notice of the claim of M’Bride’s heirs before he made the purchase, it follows necessarily that the recovery by them cannot be a sufficient ground to rescind the contract. But whether he had notice or *146 not, the court acted correctly in refusing a rescision of the contract. From the covenant of Rochester, it appears evidently to have been the understanding of the parties, that an eviction from part, should not avoid the contract entirely; but that compensation should be made for the quantity lost. We think, therefore, the court decided correctly in refusing to set aside the contract. But whether the evidence and exhibits in this cause would justify a decree for a specific execution of the contract, on a bill framed for that purpose, and with all the necessary parties before the court, we deem unnecessary to decide. We are of opinion, however, that the court decided erroneously in decreeing a conveyance, under the bill and prayer in the present cause. The bill alleges fraud, and prays for a rescision of the contract; under such allegations and prayer, a specific execution should not, under any circumstances be decreed. The defendant in such a case could not anticipate a wish in the complainant to have the contract executed; nor can he be considered to have prepared his cause against a claim for a specific execution. Besides, it frequently happens, as in this case, that different parties are necessary in the one case, to what are required in the other. But even if it was competent for an execution of the contract to be decreed under a bill framed as that in the present case, yet, the court erred in pronouncing a decree on the merits, before all proper parties were before the court. The legal title of the land is not in Rochester; he held an obligation on Hinch, which he transferred to Anderson, and by the statements in Anderson’s bill, the legal title is in M’Bride’s heirs, He should have had all those interested in his claim, and those having the legal title to the land, before the court, before, under any circumstances, the court could regularly decree an execution of the contract. The decree of the circuit court is, therefore, erroneous and must be reversed. It is, therefore, decreed and ordered by the court, that the decree of the Lincoln circuit court be reversed; that this cause be remanded to that court; that the bill be dismissed with costs, but without prejudice to the right of the complainant there, to bring any other suit for a specific execution of the contract, if he should be disposed to do so, And it is further decreed and ordered, that the plaintiff in error recover of the defendant his costs, &c.
Nor would the circumstance that suit had then been brought for a small part of the land, (& that part afterwards recovered,) which fact was known to the vender, and concealed from the vendee, justify a decree rescinding the contract.
A man's not denying an assertion made in his presence to his prejudice, shall not be taken as evidence of its truth, if the circumstances under which it was made, furnish evidence of reasonable motives for his silence, if it was false.
On a bill brought by the vendee of land to procure a rescision of the contract, on the ground of fraud committed by the vender, it is erroneous to decree a specific execution of the contract, although the bill does not contain prayer for relief generally.